I will please quote Karen Grant on behalf of the appellants and cross-appellees. The issue in this appeal, the primary issue in this appeal, is whether the bankruptcy court erred in denying equitable tolling where the Chapter 7 trustee in this case made a, elected not to pursue certain claims upon discovery of those claims. In addition, the court denied the motion for reconsideration filed and there's an issue as to whether the court erred in applying the tailored decision to the undisputed facts in this case. The plaintiffs have argued the stop clock rule applies in this, to Section 546, Statute of Limitations. They've argued that the trustee should have had two years from the date of her discovery when she received notice of these claims from the plaintiffs. And they also assert that the trustee's diligence in pursuing the claims after that discovery is not relevant. I don't think that this court, this appellate court, needs to even go to any of those issues. What they did not prove, which is an important element of obtaining equitable tolling, was that there were extraordinary circumstances in this case that prevented the trustee from filing a timely action. The record in this case primarily consists of the declarations of the trustee. She filed a declaration in reply to the plaintiff's objection to her motion to approve a compromise for her timely filed avoidance action. And in that pleading and her declaration, she was very candid. She said she had investigated all facts before she filed her timely complaint and determined there were no other actions that she wanted to pursue in that complaint. She also was candid about what she felt the plaintiff's motivations were and why she didn't want to pursue. This is the action the trustee files on September 19, 2013? Correct. And her reply and declaration are at pages 328 to 340 of the excerpts in number 23. She stated in her declaration that, in her opinion, the predators were pursuing something of a personal vendetta or crusade against the debtor and her relatives and wanted her to do so on their behalf. She stated, I do not believe that going on such a fishing expedition is appropriate in my role as trustee. She then filed a declaration that was part of the plaintiff's opposition to the defendant's motion for summary judgment. It was a lengthy declaration. And she stated in that declaration that she knew of the existence of this account where the paragraph 30 transfers were made. As early as November of 2011, when at her request, the debtor produced six months of the bank statements. At that time, she testified she saw no evidence of any fraudulent transfers. She did have notice of a possible preference from that same account. She pursued it, and it was settled, and that was resolved. She testified that prior to the filing of her timely complaint, the plaintiffs approached with what they considered were additional allegations that they thought she should include in her complaint. She testified, and again, this is at the record 1184, that she decided not to include those transfers for lack of evidence, the complexity in proving actual and fraudulent intent with respect to those transfers, the cost in litigating the claims, and the difficulty in obtaining documents. And it's important to note that these payments that the plaintiffs wanted her to pursue were in 2006, they were 2007, they were well over five years old. And she elected consciously not to pursue her claim, utilizing her power and authority as a trustee to exercise her business judgment. And plaintiffs, you know, obviously found fault with that. Ultimately, eight months after she had filed her timely complaint, her action was settled and dismissed. Thereafter, the plaintiffs came forward and said, well, we'll take the claims that you didn't pursue, or we're going to object to this sale, I mean to this compromise, and she agreed. No one agreed or waived the defense of timeliness, the bar of the statute of fraud, I mean the bar of the statute of limitations. And the bankruptcy court correctly determined that under those facts, with that kind of testimony from the trustee, there were no extraordinary circumstances that would justify a rarely applied doctrine of equitable tolling. The courts, the Supreme Court, this Court, have been very clear that equitable tolling should only be used sparingly. And these are not the kind of facts that would ever justify equitable tolling. In fact, allowing equitable tolling here would really impede a trustee from making her own independent business decision in a case. If a predator could come forward and say, well, now I think here it is, you now know of these, we get an extra two years. Well, how do you square that with the stop clock rule? Thank you. Okay. So the current equitable tolling doctrine has evolved. The Akers and Mattei case that we cited discusses this, and the fact that it now requires two elements to be proven separately. One, the party has been pursuing his rights diligently and that some extraordinary circumstances stood in his way and prevented timely filing. That extraordinary circumstances element has actually taken on some equal, if not more important, greater significance. SOCOP and the stop clock rule, SOCOP was a deportation case, and it has been applied primarily in the habeas cases where people are losing their freedom. They're being deported. But it hasn't been applied universally. So there should be a different rule for habeas cases than for other types of cases when we consider equitable tolling? I think the Supreme Court has made it clear that equitable tolling should be rarely applied. It needs to be on a factual case-by-case basis that is determined whether or not you have justification for equitable tolling. And you need to meet both elements. You're not proposing a different test for bankruptcy than applies in the habeas of the immigration area. I'm not, but SOCOP has not even been universally applied there. The cases have talked about the tension between the SOCOP, which stops the clock during this tolling period where you have these extraordinary circumstances, and those cases that have required diligence after that extraordinary circumstances has ended. Well, in SOCOP, you wouldn't even look at that. So you see Ninth Circuit cases that have had a tension there. Foo, which we cited in our opinion, Luna v. Kernan, Gibbs v. Legrand, they have all talked about the diligence after discovery. Doesn't Gibbs pretty much lay it out clearly how the two prongs should work, that you look first, you look at the first prong, and you can consider post-tolling period delay in determining the first prong, but the person still has, gets the, after you determine the first prong and the second prong, the person still gets the benefit of the whole time if you find that there was not excessive delay. Well, again, Foo didn't even discuss SOCOP in a recognized or the equitable tolling. I mean, sometimes we have these decisions where SOCOP isn't even discussed or applied in these cases. But I think the, so Foo saw the importance of diligence through filing requirement for equitable tolling. So did Luna v. Kernan. Well, obviously in a straight SOCOP stop clock, it stops the clock. So you don't have that issue. There is some real tension in the Ninth Circuit over this issue. We acknowledge that in Gibbs. Yeah. But aren't we bound by Gibbs? Well, perhaps. I mean, we ourselves said that there was some tension. Right. But Gibbs would sort of be sort of the last word on that, and I don't think this panel doesn't have the authority to go around Gibbs. But, again, applying it outside of these habeas cases, applying it into a statute of limitations that begins on the date of filing of a case and where Congress gave the trustee two years in which to investigate and file avoidance actions, obviously the problem we have here is that we would have to accept that the filing of the Chapter 7 is an extraordinary circumstance. It's not. At the date, it's particular to bankruptcy. At the time a Chapter 7 gets filed, the trustee knows nothing about this case. She investigates, and Congress doesn't. Right, but in this case, the extraordinary circumstances that were found was that the debtor was obfuscating, was not forthcoming, was hiding assets, was fraudulently transferring assets, didn't list dollar assets. So the debtor was blocking the trustee from doing the ordinary kind of discovery that they would do. I'm not actually sure the record completely supports. But those were the findings of the judge. Yeah, but I don't think that this record. First, the debtor didn't lose her discharge because of those particular reasons. She lost her discharge because it was a discovery sanction in their complaint. I mean, that was part of what they were seeking was to revoke the discharge, but she did lose their. So I'm not sure that this supports this. For example, one thing I've noted was that the court indicated that in the statement of financial affairs, number 10, she should have listed these things. Well, those were for transfers within two years of the filing that were out of the ordinary course of business, and these transfers were well beyond the two years. So there were some things in those findings that I would disagree with as well. Well, the bankruptcy court did find diligence prior to mid-September 2013, correct? Yes, the trustee diligently decided not to elect her. And then it was a few days before the statute of limitations ran that additional information came to the attention of the trustee, is that correct? They brought what they call an asset book, and the trustee looked at it and saw no evidence to support her filing those claims. Even eight months later when she dismissed and settled the claim, and she filed this declaration for them, she still stated in that declaration, I see still no evidence of fraudulent transfers. So I think she had the ability to investigate, to look at, and decided, elected not to, and all the way up through the date she settled and dismissed that case. All right, counsel. We are over your time. Thank you. Good morning. May it please the Court. I'm Dan McCarthy, counsel for the appellees and cross-appellants. Counsel spent a lot of time talking about the facts that were before the bankruptcy court. Judge Bardo, your question was spot on. The bankruptcy court made the determination, conceded by the appellants, that the trustee had been diligent up until September 2013. The plaintiffs, well, the appellants conceded that the trustee had been diligent in her investigation prior to learning of the transfers in September of 2013. They conceded that. And the bankruptcy judge found there was, quote, no significantly probative evidence, end quote, that the trustee, quote, discovered or could have discovered the paragraph 30 transfers that were the subject of the summary judgment ruling. So there was equitable tolling until September 2013. And the discussion about what occurred before then by counsel is irrelevant. Now, what do we have when we get to 2013? What the trustee said in her declaration was not exactly what counsel portrayed. She said at the beginning of September 2013, she had allegations by my clients in a book of documents that had been provided that there was still a lack of documentation, that there would be greater complexity in pursuing the fraudulent transfer claims that are the subject of the underlying adversary proceeding. My clients eventually commenced that there had been a lack of cooperation from the debtor that affected her decision. Now, counsel cited a few times to a declaration that the trustee filed in support of a compromise motion that was filed in May of 2014, where the trustee in defending the compromise that gave Ms. Grant's clients broad releases said, I've done a full investigation. And so I'm okay with the broad releases. My clients objected saying you haven't done a broad investigation. The broad releases unrelated to the adversary proceeding that was deemed settled should not be released. And at that point, when the trustee went through the evidence with my client, she changed her mind and she limited the releases in that settlement to the transfers that were alleged in the adversary that was deemed settled and thereby preserved claims for all the fraudulent transfers that were then later filed by my clients in the underlying adversary. So that's the part that counsel didn't tell you about. Trustee changed her mind and then deferred to my clients as trustees often do to let the largest creditor pursue the claims. So at the point of September, 2013, under SOCOP and the stop clock rule, my client then has two years or the trustee had two years from September, 2013 to file the lawsuit. It was filed a year later. It was timely. The nine judge majority opinion, which your Honor, Judge Wardlaw was part of in SOCOP, set forth multiple policy reasons why the stop clock rule made sense. Counsel is asking you to do something that you can't do. We cite the Narita decision in our opening brief for the second brief for the court to consider or overrule circuit court precedent unless there's intervening Supreme Court decision that undermines the ninth circuit precedent. You have none cited and the intervening, not the intervening Supreme Court precedent is on a case close to the one before the court, which also don't have the three. If you're up, if you're on it, we're even considering not following SOCOP. Narita doesn't permit that. And I think your Honor's question was correct. Gibbs was the last statement on this from a published opinion in the ninth circuit. Both Gibbs and SOCOP are a little bit different situation. SOCOP had only a 90 day window and that's, that's very, very short. It's, it's, it's it's very difficult to, to, to want to sort of parse the number of days you might have left under a different rule when all you ever had was 90 days to begin with. That's right. The other ones are, are habeas cases where it's, it's an entirely different rule, particularly in California, where California doesn't have a fixed time for, for filing, filing your state, your state habeas. So we've got, we, we do have a fixed time here. So why shouldn't we consider the diligence of, of your clients after they discovered the fraud? Well, just let me start out by talking about the authorities, Your Honor. We have SOCOP, which was a 90 day period and a BIA case. We have the Knight decision, which was 2015 unpublished, which was a habeas case one year period. We have Gibbs, which was also a habeas case a one year period, but then we have the stop clock rule also being applied in Bender two, I'm sorry, Bender three, a ninth circuit unpublished decision from 2012, I believe, which applied SOCOP to a bankruptcy context and a two year limitation period, albeit to post petition transfers. But there's no distinction from a legal point of view between whether there should be equitable tolling for a two year period to pursue a post petition transfer versus a pre petition transfer. They're both two years. It's the same issue. Bender was 2012 applying SOCOP to the bankruptcy context. And then you have the Mangum decision from 2009 where the majority opinion said that the discovery rule extends the limitation period under a fair debt collection practice claim. But in his concurring opinion, Judge O'Scanlan pointed out that he, while he disagreed with that, he would concur because under SOCOP, the stop clock rule gave the plaintiff in that case, a full time period under the statute of limitations. So you do see it in other situations before the ninth circuit, both in published and unpublished decisions. Now, to answer your question directly, why should it apply here for all the policy reasons that were discussed in SOCOP? And there were four reasons. It is needlessly difficult to determine when the period of the limitation period stops after tolling. If you're then going to apply another reasonable diligence requirement to post to the post discovery period. Secondly, it promotes an inconsistency in application. Thirdly, it promotes uncertainty of calculation. How long are you going to have? Fourth, SOCOP said a court arguably usurps congressional authority when it tolls and then rewrites the statute of limitations by substituting its own subjective view on how much time a plaintiff reasonably needs to file suit. And that's what the bankruptcy court did in this case. It didn't give my clients the full two years. It suggested that maybe by the may 2014 compromise motion, that which was eight months after the two year period had run absent tolling the trustee should have then by then filed a lawsuit. So the judge was looking at the post discovery diligence and that was done improperly. So those are the policy reasons why cited by SOCOP. So just to clarify your, your argument isn't that we don't look at all at the post post tolled time period diligence. Your argument is your, your clients in fact did act diligently both pre and post. That's right. Once you get to the tolling has ended, which in this case was 2013, you don't look at reasonable diligence after that. You get the full two year period of time and you can take the full period to file the claim. We don't get to look at diligence after the discovery at all. That's correct. I think it said something else. So that's why I'm trying to clarify whether Gibbs said you look at post tolling discovery to determine overall reasonable diligence. That's correct. Okay. So are you, so we do get to look at post post discovery diligence. You do your honor, but put it in the context that Gibbs described it. And I think Judge Ward accurately described it earlier. What Gibbs said was post discovery diligence is quote, one factor in a broader diligence assessment, end quote, but then it went on to say by itself, it is not quote determinant. How can we determine whether your clients were diligent post discovery? Since there were no findings in the district court used the wrong, I mean, the bankruptcy court used the wrong standard. Don't go in. Wouldn't we have to, if we agree with you, wouldn't we have to send this back for those findings and decide under, under Gibbs, whether tolling was proper here or the bankruptcy court didn't used, got most of the law, right. But maybe not, maybe not this nuance that Judge Ward was just raised. Yeah. Again, the post discovery diligence is to be considered in a broader diligence assessment. And looking back to the pre discovery period, is there some conduct by the trustee in the post discovery period that would suggest that pre discovery, she had not been diligent. Keep in mind the appellants conceded the trustee had been diligent. And with the evidence submitted, the bankruptcy judge found that there was no probate of evidence whatsoever. What about the diligence of your clients? Once they knew of the, Oh, that's a different question because my clients are simply stepping into the trustee's shoes. Our diligence is not the issue. The trustee was the one with the right to pursue the fraudulent transfer claims. My clients finally got assigned that right to pursue them on behalf of the estate. So when were they assigned the right September? Well, technically your honor under a stipulation in September of 2014, they were conferred authority to bring these claims on behalf of the estate. And they filed September 14. The stipulation was filed about September 14, 15, 2014. And I believe our complaint was filed the very next day when the judges. I think it's 17th of September, 2014. Yeah. Yeah. Right. In mid September, the stipulation was filed. The order was immediately approved. My client got authority and then immediately filed the next day. So you could, you could argue from that, that they there's no way they could be found to have not acted diligently since they filed the day after the stipulation. But, but you're saying that your client stands in the shoes of the trustee. So your rights don't rise any higher. So if the trustee had not been diligent and then assigned the right to your client, that wouldn't give your client an extra edge. That's correct. Your honor. But again, the trustees post discovery diligence is a wrong. I'm not saying one way or the other, but that's exactly right. We don't get an edge because now we're somebody who's newly stepping in. I agree with that proposition. I did want to just say one, a few other things about this and move on. Just tell us what evidences or findings or anything relates to the trustees diligence. Well, it was in the bankruptcy judges opinion. And that's in the record at pages 11, 10, 11. And then at page 26 is the portion where I quoted that there's no significantly probative evidence that the trustee discovered or could have discovered the transfers that were the subject of paragraph 30, the transfers by the debt. That still doesn't go to the question as to whether the trustee behaved diligently after the discovery. That's right. Right. So do we need to send this back for further findings then on that question? I respectfully submit you're under, under SOCOP and even under Gibbs, it's not a determinative issue, especially when you have a clear finding that pre-September 2013, the trustee had been diligent. If she sat on her hands after first learning of the transfers in September 2013, that's not going to reflect on whether she had been diligent pre-September 2013. It just won't. It's not going to bear upon it. So while theoretically under Gibbs, looking at diligence in the post-discovery period is relevant to the overall diligence assessment, it's not determinative, particularly under the fact that it's not. So what you're saying is if SOCOP applies, we don't have to worry about the trustee's diligence. That's right. But if there's, if the Gibbs case overlays that to some extent, then you would have to determine the diligence of the trustee post the ending of the tolling period. Yes, that's correct. It's just that under the facts of this case and the clear finding of the court, the post-discovery diligence, given the trustee's discovery of the transfers in September of 2013, the post-discovery diligence can't possibly bear upon her. If the SOCOP case applies, that's probably right. In other words, if the Gibbs influences that decision or modifies it or controls it in some fashion, then we'd have to, as Judge Bivey says, you'd have to make a determination about post-diligence, so to speak, and make a determination whether, because we have to remember, equitable tolling is equitable. I mean, it's the doctrine of whether it's equitable under the circumstances. It's not like a statute of limitations, which has a two-year period and you can sit on your hands up until the last day of the two-year period and still file your lawsuit. Nobody can complain about it, correct? That's right. But when you get into tolling, then that's a different situation. That's correct. I think SOCOP actually addressed that in saying that you do get to sit on your hands essentially for the full period because you're entitled to have the full period. Well, that's the question. I did want to briefly address the other issue that we appealed on, which was the dismissal of the first three claims under paragraphs 31 and 35. 31 to 35. Just a court there held that those transfers were not made by the debtor, so they were not avoidable under the bankruptcy law. Okay. And that's the conclusion, without having the benefit of the evidence or legal discussion, that the bankruptcy court and the BAP reached. And you can't assume at the prepleading level that transfers by Charlene's Transportation, Inc., the corporation, are not debtor money. And we cited a lot of cases where transfers by a corporation can be treated as a dividend to the debtor, that it could be shifted salary. And we also pointed out that CTI was alleged to be the alter ego. Did they give you leave to amend that, or did they dismiss those claims without prejudice? They dismissed. The judge dismissed under Rule 12b-6 analysis in response to a summary judgment motion with leave to amend. We elected not to amend an appeal as is our right under the authorities we pointed out in our opening brief, so that all this could be considered together. But the point, Your Honor, is that even though the transfers were by CTI, you can't prejudge at the pleading stage that they can't be deemed transfers by the debtor. The other issue that was raised by the BAP is that my clients and the trustee are not creditors of CTI, so there's no standing to bring a fraudulent transfer action. And we point out in our reply brief, well, that's simply not true because a CTI is alleged to be a co-conspirator, an aider and abetter, and an alter ego. So we were creditors of CTI as well under those theories that were alleged. So because we alleged direct claims against the debtor, if the money is deemed the debtor's money, and because we alleged a derivative claim, if the money is truly deemed CTI money, we had standing under either alternative to be able to proceed with the complaint as alleged. Amendment wasn't needed. And, again, you don't focus on the title of the causes of action. You focus on the facts that are alleged. Well, the court said that the complaint does not allege that the Templetons or the bankruptcy estate of the debtor are creditors. Did you not allege that? The allegation is not made that they were creditors of CTI. They were alleged to be creditors of the debtor. So to the extent that the monies were deemed transfers by the debtor under the theories I mentioned, they satisfied the creditor requirement. To the extent the monies were deemed monies of CTI and not the debtor, so the claims were derivative, we alleged that we were creditors not in an express statement, but inferentially by alleging that CTI was an aid or a better, co-conspirator, alter ego, and therefore my client, because it's a creditor of the debtor, is also a creditor of CTI. Those factual allegations were made in the complaint. So I would just suggest that the bankruptcy court in the BAP prejudged the allegations of the derivative claims, which also could be direct claims, too early in the case without having considered that the monies could be deemed transferred by the debtor without even having any legal authority on it. But this was made on summary judgment? So you had discovery at that point? There had been no discovery whatsoever, Your Honor. The summary judgment motion was filed very early in the case, shortly after the answers were filed. But if it was decided on summary judgment, then you were effectively conceding to the court that the facts were in. Yeah, that's right. We submitted the facts in opposition, and I think they were in. We didn't ask for more time to do discovery at that point because of the trustee's detailed declaration, which I think at a minimum raised factual issues on whether summary judgment should be granted. But under SOCOP, those issues were not relevant. But I thought you said it was a 12B6 motion. Let me just clarify, Your Honor. It was a summary judgment motion. And in response, we said, if our motion isn't clear enough, I mean if our complaint isn't clear enough, we think it's clear enough. But if it isn't, we'll amend to clarify it for you. In his ruling, Judge Carroll jumped to a 12B6 analysis and said, I'm not going to analyze these claims for the paragraph 31 to 35 transfers under a 12B6 standard. And I don't think that you've stated those claims. We didn't have prior notice and opportunity to respond to him. That's what he did. So that's a procedure. But he gave you an opportunity to amend. So why didn't you take it at that point? Because, Your Honor, respectfully, we didn't need to amend. We had adequately alleged the claims. Okay. So that's the argument I just made. We think we did adequately allege the claims. Amendment wasn't necessary. And that's why we elected not to amend and we appealed, along with the SOCOP issue on summary judgment. All right. Thank you very much, Counsel. Thank you very much for the extra time. I appreciate it. Yes. Milby, do you have one more? No, you don't have five minutes. You have 39 seconds. All right. I'll give you another minute or so. Briefly, Your Honor, I just wanted to point out that in the trustee's declaration, she does state on page that she does state that as of the date of her declaration she still doesn't see any evidence of the transfers. So, you know, we have a case in which a trustee all the way through. Right. But then she was willing to give them an opportunity to prove what they could. Are they stopped by her? If that's the case, we would never get things that would be assigned by the trustee back to the creditors. She didn't give them any more than what she had at that point. There was nothing other than the fact that what we did as part of the compromise was to limit the release only to the claims that were made in the trustee's complaint. And there was a stipulation. We were on a party to it the next, you know, after we approved the compromise, that they could bring whatever claims that they thought they had at that point. She did not. We didn't waive our defenses to that. She didn't gain any more as a result of us limiting the release. That wasn't, she didn't give them any more than what she had at that point. I think there is Supreme Court precedent that the Menominee Tribe, that you have to prove both elements of both the diligence and extraordinary circumstance. And in a bankruptcy setting, to say the filing of a case is in extraordinary circumstances under 546, precluding the trustee to file an avoidance action, doesn't make a whole lot of sense. It doesn't make a whole lot of sense to give, in this case, a trustee where we had here, a creditor to come in and say, oh, well, I think you should bring these claims, and since you've never seen them before, we get another two years to bring it. It doesn't make sense where you have a set determined time by Congress, from the date of filing to the two years. The bender cases, post-petition transfers, are different. That's where you have a transfer that's been hid. That isn't the case here. We had an election. Trustee made a business decision not to bring these claims. She was very articulate about it in her declarations. Thank you, Counsel. Thank you.
judges: Wardlaw, Bybee, Bartle